USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: **3-3-20**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

    **JAMES ROLKIEWICZ,**           :

                                         :

                **Plaintiff,**  :

       **-against-**              :      **1:16-CV-06771 (ALC)**

                                        :      <u>**OPINION AND ORDER**</u>

    **THE CITY OF NEW YORK et al,**  :

               **Defendants.**  :

                                         :

                                         :

--------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff James Rolkiewicz brought this action against New York City and New York City Police Officers Colin Sullivan and James Quirk, alleging violations of his federal constitutional and state common law rights. Because Rolkiewicz voluntarily dismissed all claims of municipal liability, his remaining claims are against only Sullivan and Quirk. Liberally construing his First Amended Complaint ("FAC"), Rolkiewicz's remaining claims are for excessive force, failure to intervene, denial of medical treatment, intentional infliction of emotional distress ("IIED"), and conspiracy. Defendants moved for summary judgment on all claims. That Motion is **GRANTED** in full.

## BACKGROUND

      According to his Amended Complaint, Rolkiewicz was brutally beaten by two police officers on September 1, 2015. That night, Rolkiewicz alleges that he was walking along Barrow

Street in Greenwich Village when he experienced an asthma attack and sat down on the front steps of the Greenwich House Music Society to search for his inhaler. (FAC at ¶ 21). While he was sitting on the stairs, Police Officers Sullivan and Quirk pulled up in a marked squad car. The officers exited the vehicle and approached Rolkiewicz. (*Id.* at ¶ 22). Rolkiewicz alleges that the first thing the officers did was call him a "fucking faggot" and then demand his ID. (*Id.* at ¶ 23; ECF No. 56-3 at 9:21–10:1). Sullivan then "immediately grabbed [him] and repeatedly smashed his face and head into the hood of [his] NYPD patrol car." (*Id.* at ¶ 24). The Complaint also states that at some point in the course of this attack, Rolkiewicz was "placed in a chokehold, handcuffed and choked until he lost consciousness…dragged to the back of the patrol car while still unconscious, thrown to the ground," and had his spine "repeatedly punched on." (*Id.* at ¶27).

Rolkiewicz provided additional details about the attack throughout the course of litigation. He testified that after Sullivan called him a "faggot," he "grabbed [him], swung [him] around, handcuffed [him] so tight that he cut into [his] wrists" all while Rolkiewicz could "barely breathe." (ECF No. 56-3 at 10:2–6). Rolkiewicz then tripped and fell while Sullivan had him "by the back of the neck" and was choking him using the "heavy gold chain" that Rolkiewicz wore around his neck." (*Id.* at 10:7–10). Sullivan then "drag[ged]" Rolkiewicz over to the NYPD cruiser and "bashed" the right side of Rolkiewicz's face "into the side of the car, cut[ting] [his] whole face open." (*Id.* at 10:10–12). Rolkiewicz testified that Sullivan continued to call him names and then "start[ed] punching [Rolkiewicz] and hitting him…in the back of the neck…[w]ith his elbow." He "punch[ed] [Rolkiewicz] in the middle of [his] spinal column to the point where he lost consciousness[,]" approximately 10 or 11 times. (*Id.* at 10:20–22; ECF No. 56-6 at 12:9–11).

Defendants dispute this version of events. According to Defendants, the officers saw Rolkiewicz and another man sitting on the steps of a residential apartment building on Barrow Street when they pulled over and approached. (ECF No. 56-8 at 12:16–13:7). Sullivan then asked the two men to step in front of the patrol car and asked Rolkiewicz for his ID, which he provided. (*Id.* at 14:23–15:1). Sullivan ran the ID and learned that Rolkiewicz had five active warrants and a prior conviction for manslaughter. (*Id.* at 15:2–10; Def. 56.1 at ¶¶ 11). Sullivan testified that at some point before he arrested Rolkiewicz, the officers discovered a "crack pipe, with crack cocaine residue inside a pack of cigarettes that Mr. Rolkiewicz had thrown to the base of the stairway which he was seated on when [the officers] approached." (ECF No. 56-8 at 15:10–16).

Based on the open arrest warrants and pipe, Sullivan decided to place Rolkiewicz under arrest. Rolkiewicz resisted the arrest, "stiffen[ing] [his] body, [he] threw [his] arms back, and [he] made it hard [for the officer] to handcuff [him]." (Def. 56.1 at ¶¶ 14–15). As a result of Rolkiewicz's resistance, "a physical struggle ensued," which led to Sullivan placing the right side of Rolkiewicz's face down on top of the patrol car. (*Id.* at ¶ 13, 16). Rolkiewicz continued to resist arrest. Sullivan testified that he managed to handcuff one of Rolkiewicz' wrists, but as he was "attempt[ing] to place the second handcuff[,]" Rolkiewicz "struck [him] twice above [his] left elbow with his elbow, and began to violently resist arrest." (ECF No. 56-8 at 16:37). Quirk testified that he assisted Sullivan in trying to restrain Rolkiewicz by facing Rolkiewicz and taking his "right arm, right hand, and attempt[ing] to place it behind his back." (ECF No. 56-17 at 4:9–10).

Eventually, "to gain [Rolkiewicz's] compliance, Officer Sullivan took out his expandable baton and held it inside of his fist, but did not expand the baton. While holding the unopened

baton in his fist, Sullivan struck plaintiff twice with the base of the baton 'in the muscle portion'
of plaintiff's back." (Def. 56.1 at ¶ 18). Sullivan testified that when he struck Rolkiewicz, he
"was fearful for personal injury, potentially serious physical injury." (ECF No. 56-8 at 21:16–
17). He testified that he struck Rolkiewicz only to assist in subduing him and that the strikes
stopped once they were determined to have been effective. (*Id.* at 24:23–25). He also testified
that he struck Rolkiewicz because he felt that he could not use pepper spray to subdue
Rolkiewicz because he felt "there was a high probability that [he] would spray himself and [he]
might spray his] partner. It wasn't a viable option in close quarters." (*Id.* at 28:10–20).
Eventually, the officers secured handcuffs on Rolkiewicz and arrested him for Resisting Arrest
(N.Y. P.L. § 205.30) and Criminal Possession of a Controlled Substance (N.Y. P.L. § 220.03).
(ECF No. 56-9).

The officers then transported Rolkiewicz to the police station. (Def. 56.1 at ¶ 22).
Rolkiewicz testified that he was unconscious during this transport because the next thing he
remembers after the attack was being placed on a gurney at the precinct. (ECF No. 56-3 at 14:3–
8). Rolkiewicz testified that the officers and EMTs brought him to Lenox Hill Trauma Center for
treatment. The physicians at Lenox Hill took X-rays and examined and bandaged Rolkiewicz.
Rolkiewicz alleges that the doctors then instructed the officers to bring him to a different hospital
for further treatment. According to Rockiewicz, the Lenox Hill doctors told the officers and
himself that as a specialty trauma center, Lenox Hill was not equipped to treat Rolkiewicz's
injuries fully. (*Id.* at 15). Rolkiewicz testified that despite the physicians' instructions, the
officers refused to take him to another hospital. (*Id.* at 15:5–17).

Defendants dispute Rolkiewicz's account of these transports. Sullivan testified that
Rolkiewicz never lost consciousness. (ECF No. 56-8 at 23:1–2). He testified that Rolkiewicz

asked for medical attention after he was transported to the police station and that the officers then requested it. (*Id.* at 27:21–23). According to EMS records submitted by Defendants, when Rolkiewicz was transported to the hospital, he was "awake & breathing and responsive to tactile stimuli." (ECF No. 56-11 at 4).

On September 2, 2015, the day after Rolkiewicz was arrested, he was arraigned on his charges in a New York Criminal Court. (ECF No. 56-15). He pled guilty to only one charge, Resisting Arrest, and received time served. (*Id.* at 4:9–15).

## II. Procedural Background

On September 3, 2015, two days after his arrest, Rolkiewicz filed complaints with the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau ("IAB"). On August 29, 2016, he filed his complaint in the instant suit against The City of New York and Police Officers Colin Sullivan and James Quirk. (ECF No. 1). Rolkiewicz amended his complaint on January 24, 2017. (ECF No. 15).

Rolkiewicz's Amended Complaint set out 16 causes of action, many of which are unclear or repetitive. On June 21, 2019, Rolkiewicz voluntarily withdrew seven of these claims. Specifically, he withdrew his Fifth Cause of Action for Malicious Prosecution, Sixth Cause of Action for Malicious Abuse of Process, Seventh Cause of Action for Negligent Hiring, Screening, Retention, Supervision and Training, Eighth Cause of Action for False Arrest and False Imprisonment, Ninth Cause of Action for Negligence, Tenth Cause of Action for Negligent Infliction of Emotional Harm, Fourteenth Cause of Action for Municipal Liability, and Sixteenth Cause of Action for Malicious Abuse of Process. (ECF No. 52). Additionally, although Rolkiewicz did not explicitly withdraw his Twelfth Cause of Action, which alleges only that the Defendants "owed a duty of care to this Plaintiff," I will proceed as if this claim too has been

withdrawn since it seems to allege only a component of negligence, a cause of action that Rolkiewicz withdrew in his June 21 letter. Similarly, to the extent the FAC's remaining counts contain language regarding "false arrest," "false imprisonment," "negligence," and "malicious prosecution," I will treat these allegations as having been withdrawn as well.

Liberally construing his Amended Complaint, Rolkiewicz's remaining claims appear to be for excessive force and the related failure to intervene under 42 U.S.C. § 1983 (FAC at ¶¶ 24–27, 45, 50, 54), denial of medical treatment under 42 U.S.C. § 1983 (*Id.* at ¶¶33–34, 37), conspiracy under 42 U.S.C. § 1985 (*Id.* at ¶¶ 111–113), and intentional infliction of emotional distress under New York State law (*Id.* at ¶¶ 88–93).

Rolkiewicz provided an in-person statement to the CCRB about the arrest on October 5, 2015. In connection with this lawsuit, Rolkiewicz testified at a 50-h hearing and was also deposed. (Def. 56.1 ¶¶ 39–43). In all instances, Rolkiewicz described the injuries he sustained from Sullivan's attack. In his initial complaint to the CCRB, Rolkiewicz said that he had "cuts and scrapes" under his right eyebrow, a swollen eye, black and blue arms, and a black and blue back. (ECF No. 56-6 at 11:7–15). He told the IAB that he suffered "[s]crapes on the right side of [his] face" and that his "eye was swollen on the right side." (ECF No. 56-7 at 6:21–22). He also told the IAB that doctors at Lenox Hill had diagnosed him with "severe trauma to the back." (*Id.* at 6:17). At his CCRB interview, Rolkiewicz stated that after the attack, he "was bleeding and [his] eyes swelled up. The whole side of [his] face was swollen." (ECF No. 56-5 at 18:18–20). At his deposition, Rolkiewicz testified that as a result of this incident, he sustained "permanent damages to [his]…neck and…spine" including "[n]eck injury to [his] nerves, crushed vertebras to the back of [his] neck, by [his] spinal column vertebrae 4, 5, and 6, which came up in the MRIs, [and] hand damage to [his] nerves." (ECF No. 56-3 at 16:3–4; 17:3–9).

On July 10, 2019, Defendants filed their Motion for Summary Judgment pursuant to a briefing schedule set by this court. (ECF No. 54). Rolkiewicz's Response was due July 31, 2019. On August 6, 2019, Defendants filed a letter noting that, to date, Rolkiewicz had failed to file his Response, and requesting that I treat Defendants' Summary Judgment Motion as unopposed. (ECF No. 58). Rolkiewicz's attorney filed a letter with the Court the same day requesting an extension until August 12, 2019 to file her Response. (ECF No. 59). I granted the request over Defendants' opposition. (ECF No. 60). On August 23, 2019, Defendants filed another letter, noting that Rolkiewicz's attorney again failed to file her Response, and requesting that either the case be dismissed for failure to prosecute or that Defendants' Motion for Summary Judgment be deemed unopposed. (ECF No. 61). On October 24, 2019, I issued an Order for Plaintiff to show cause within seven days as to why Defendants' Motion should not be treated as unopposed. (ECF No. 62). To date, Plaintiff has not responded. Accordingly, I consider Defendants' Motion as unopposed.

## STANDARD OF REVIEW

Summary judgment is appropriate only where all submissions, pleadings, affidavits, and discovery materials that are before the Court, taken together, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. " *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The moving party bears the burden of "demonstrat[ing] that no genuine issue respecting any material fact exist." *Gallo v. Prudential Residential Servs., Ltd. P'Ship*, 22 F.3d 1219, 1223 (2d Cir. 1994). "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654

F.3d 347, 358 (2d Cir. 2011) (internal quotation marks and citations omitted). "There is no issue of material fact where the facts are irrelevant to the disposition of the matter." *Campbell v. Hanson*, 17-cv-1024, 2019 WL 2717691, at *3 (S.D.N.Y. June 28, 2019).

"In deciding a summary judgment motion, courts must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* at *2. In reviewing the evidence and inferences that may reasonably be drawn, the court "may not make credibility determinations or weigh the evidence…'Credibility determinations…[is a] jury function[], not [that] of a judge.'" *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000) (quoting *Liberty Lobby,* 477 U.S. at 255). "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Jeffreys v. City of New York,* 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Liberty Lobby*, 477 U.S. at 252).

The standard of review is the same where, as here, the motion for summary judgment is unopposed. *Campbell*, 2019 WL 2717691, at *3. "If the movant fails to meet their burden of production, 'summary judgment must be denied even if no opposing evidentiary matter is presented.'" *Id.* (quoting *Vermont Teddy Bear CO. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)).

## DISCUSSION

As Defendants correctly point out in their Brief in Support of Summary Judgment, Rolkiewicz has voluntarily withdrawn all claims against the City of New York. Accordingly, the City is removed as a Defendant from this case. I now consider whether Summary Judgment is appropriate with respect to Rolkiewicz's remaining claims against Defendants Sullivan and Quirk. The excessive force claim relates only to actions by Officer Sullivan and the failure to

intervene claim only to the conduct or lack thereof of Officer Quirk. All remaining claims are against both Defendants. Summary judgment is proper on all claims.

## I. Excessive Force

I interpret Rolkiewicz's excessive force claim to be based upon four actions taken by Sullivan against him: (1) tight handcuffing; (2) smashing his face into the patrol car; (3) choking; and (4) punching on his spine. With respect to the last allegation, it is undisputed that Sullivan hit Rolkiewicz twice in the back with an unopened baton. Because handcuff-based excessive force claims are assessed under a modified standard, I discuss the handcuffing allegation separately.

"The Fourth Amendment prohibits the use of excessive force in making an arrest, and whether the force used is excessive is to be analyzed under that Amendment's 'reasonableness' standard." *Brown v. City of New York*, 798 F.3d 94, 100 (2d Cir. 2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment,…[and] [t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97 The application of this "reasonableness" inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "Given the fact-

specific nature of the inquiry, granting summary judgment against a plaintiff on an excessive force claim is not appropriate unless no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 123 (2d Cir. 2004).

"Courts apply a separate standard to claims for excessive force in the use of handcuffs." *Sachs v. Cantwell*, No. 10 Civ. 1663, 2012 WL 3822220, at *14 (S.D.N.Y. Sept. 4, 2012). "[I]n evaluating the reasonableness of handcuffing, a Court is to consider evidence that: 1) the handcuffs were unreasonably tight; 2) the defendants ignored the arrestee's pleas that the handcuffs were too tight; and 3) the degree of injury to the wrists." *Esmont v. City of New York*, 371 F. Supp. 2d 202, 215 (E.D.N.Y. 2005). "The injury requirement is 'particularly important.'" *Usavage v. Port Auth. of New York and New Jersey*, 932 F. Supp. 2d 575, 592 (S.D.N.Y. 2013) (quoting *Sachs*, 2012 WL 3822220, at *14). In fact, "[t]here is a consensus among courts in this circuit that tight handcuffing does not constitute excessive force unless it causes some injury beyond temporary discomfort." *Lynch ex rel. Lynch v. City of Mount Vernon*, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008); *see Usavage*, 932 F. Supp. 2d at 592 (collecting cases). "These injuries need not be 'severe or permanent,' but must be more than merely 'de minimis[.]'" *Usavage*, 932 F. Supp. 2d at 592 (internal citations omitted).

### A. Estoppel

As a preliminary matter, Defendants argue that because Rolkiewicz pled guilty to Resisting Arrest in state court, he is estopped from asserting, as he does in his Amended Complaint, that he denied resisting arrest on the night of September 1, 2015. In other words, Defendants contend that because of this earlier state court plea, I must accept that Rolkiewicz resisted arrest as an undisputed fact despite his claim now to the contrary.

As the Second Circuit explained in *Sullivan v. Gagnier*, "there is no inherent conflict between a conviction for resisting arrest...and a finding that the police officers used excessive force in effectuating the arrest." 225 F.3d 161, 166 (2d Cir. 2000). Therefore, "[a] claim of excessive force would not be precluded by [a] plaintiff's prior conviction[] for resisting arrest...unless facts actually determined in his criminal conviction that were necessary to the judgment of conviction are incompatible with the claim of excessive force being raised in the subsequent civil suit." *Id.*

The record Defendants submitted regarding the plea is minimal. The Court had the following colloquy with Rolkiewicz:

> THE COURT: Mr. Rolkiewicz, your lawyer says that you're willing to plead guilty to the misdemeanor of resisting arrest. Is that what you want to do?
> THE DEFENDANT: Yes.
> ...
> THE COURT: By your plea of guilty, do you admit that on September 2, 2015, in the County of New York, that when the police officer was trying to arrest you for being in possession of a pipe with crack/cocaine residue in it, that you resisted arrest in that you stiffened your body, you threw your arms back, and you made it hard to handcuff you. Do you admit that?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: And that was resisting arrest, wasn't it?
> THE DEFENDANT: Yes.

(ECF No. 56-15 at 4:21–24; 6:5–15). Although this colloquy does not by any means bar Rolkiewicz's excessive force claim, it does preclude a version of events in which Rolkiewicz did not resist arrest.

"The doctrine of judicial estoppel prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." *Bates v. Long Island R. Co.*, 997 F.2d 1028, 1037 (2d Cir. 1993). "Judicial estoppel may be invoked where '(1) a party's later position is "clearly inconsistent" with its earlier position; (2)

the party's former position has been adopted in some way by the court in the earlier proceeding; and (3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel.'" *McMillan v. City of New York*, No. 10 Civ. 2296, 2011 WL 6129627, at *7 (S.D.N.Y. Dec. 9, 2011) (quoting *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99. 103 (2d Cir. 2010) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001)).

In *McMillan v. City of New York*, this Court relied on judicial estoppel in a similar context. Plaintiff filed excessive force claims against multiple New York police officers based on events arising out of her arrest on March 18, 2007. 2011 WL 6129627, at *1–3. In connection with this incident, Plaintiff was charged with and pled guilty to resisting arrest and one count of assault in the second degree. *Id.* at *4. Defendants moved for summary judgment on Plaintiff's excessive force claims. In ruling on that motion, this Court determined that because of her plea, Plaintiff was "judicially estopped" from asserting "that she was 'a passive victim' or that she did not resist arrest[.]" *Id.* at *8.

Because judicial estoppel applies here, in considering whether Rolkiewicz's excessive force claim has merit, I take as undisputed that Rolkiewicz resisted arrest by "stiffen[ing] [his] body…, thr[owing] [his] arms back, and…ma[king] it hard to handcuff [him]."

### B. Handcuffing

Rolkiewicz testified that Sullivan "handcuffed [him] so tight that he cut into [Rolkiewicz's] wrists." (ECF No. 56-3 at 10:4–5). Rolkiewicz did not testify as to what injuries he suffered specifically as a result of the tight handcuffs. He testified generally to nerve injuries as follows:

> Neck injury to my nerves, crushed vertebras to the back of my neck, by my spinal column vertebrae 4, 5 and 6, which came up in the MRIs, hand damage to my nerves. I have problem on my left land. I have problem now holding things in this hand. I keep on dropping them, which kind is king of embarrassing and the fact that I might wind up crippled…The nerve it's called neck disease by him pouncing on my neck with his elbow. He crushed the nerves right here and damaged the vertebras [Pointing to his neck]…I have to have an operation on my

spinal column right here to try to repair the nerves and to take the pressure off of the vertebras.
(ECF 56-3 at 17:3–14).

From this context, it is not clear whether Rolkiewicz attributes any of the nerve damage in his left hand to handcuffing. From this deposition, it seems as though he may be asserting that all of his nerve damage is related, meaning that the hand difficulties are being caused by issues arising from having vertebrae in his neck and spinal column crushed. There is no indication that Rolkiewicz attributes these neck and spine injuries to handcuffing. Rolkiewicz never testified or provided a statement concerning what, if any injuries he did sustain from being handcuffed, so all I can rely on are his medical records. Records from Lenox Hill on the night of the incident contain no mention of Rolkiewicz complaining about or showing signs of a wrist injury. To the contrary, these documents indicate that he exhibited "[n]ormal grip strength. Normal radial pulses. Normal distal motor and sensory of the median, ulnar and radial nerves." (ECF No. 56-12 at 5).

After the incident with the officers, Rolkiewicz saw his primary care physician several times. Defendants submitted records of a September 25, 2015 visit, an October 27, 2015 visit, a November 24, 2015 visit, a December 29, 2015 visit, and a January 26, 2016 visit. (ECF No. 56-16). The September 2015 visit records note that Rolkiewicz "suffers severe leg pain resulting from long standing peripheral neuropathy as well as neck and back pain due to cervical spinal stenosis." (*Id.* at 6). They also indicate that Rolkiewicz told his physician "that he was assaulted by police recently, but [did] not provide details" (*Id.*). The October 2015 visit records mention that Rolkiewicz was in pain from "peripheral neuropathy," but does not mention any complaint involving the hands. (*Id.* at 5). The November visit documents show that Rolkiewicz told his doctor that for the past week, he had been experiencing periodic numbness and tingling in the

thumb and first finger of his left hand. (*Id.* at 2). In December 2015, Rolkiewicz described

numbness, tingling, and intense pain in both his feet and "*new* numbness" in the thumb and first

finger of his left hand "with decreased movement." (*Id.* at 10) (emphasis added). Finally, the

January visit notes indicate that Rolkiewicz was experiencing symptoms of peripheral

neuropathy in his right foot and left hand. (*Id.* at 8).

Defendants also submitted medical records for Rolkiewicz from before the incident with the

officers. (ECF No. 56-18). According to these records, Rolkiewicz was experiencing pain as a

result of peripheral neuropathy, cervical stenosis, and chronic pain syndrome before the incident.

(*Id.* at 3, 5). Consistent with these records, Rolkiewicz told the CCRB that he suffered from

spinal stenosis prior to the attack. (ECF No. 56-5 at 6:14–16).

The Lenox Hill records are the most crucial. They show that on the night of the incident,

there was no apparent trauma to Rolkeiwicz's wrists. Rolkiewicz did not testify specifically to

any injuries he sustained to his wrists from the handcuffing, only to general nerve damage that

was the result of the alleged beating of his spinal cord. The later records indicate that Rolkiewicz

reported pain, numbness, and tingling in one of his hands following the incident, but they also

suggest that these symptoms were the result of "longstanding" neuropathy. "[U]nsubstantiated

claims of nerve damage, in the absence of corroborating medical evidence, are insufficient to

sustain a claim of excessive force from handcuffing." *Cancel v. NYPD Comm'r Raymond Kelly*,

13-cv-6007, 2016 WL 590230, at *5 (S.D.N.Y. Feb. 11, 2016) (quoting *Matthews v. City of N.Y.*,

889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012). Rolkieiwcz's failure to provide any evidence, even

solid testimonial evidence that he sustained injuries as a result of handcuffing, is fatal to his

claim. *See Harris v. Nassau County*, No. 13-CV-4728, 2016 WL 3023265, at *10 (E.D.N.Y.

May 24, 2016). It is also significant that Rolkiewicz offered no evidence that he ever told the officers that the handcuffs were too tight or that he asked to have them adjusted.

Accordingly, summary judgment is proper on Rolkiewicz's Excessive Force Claim as it relates to handcuffing.

### C. Other Allegations of Excessive Force

Defendants argue that summary judgment is appropriate because Rolkiewicz's testimony and statements describing the assault are inconsistent and contradicted by medical records, and the force Officer Sullivan admits to using on Rolkiewicz was objectively reasonable under the circumstances. Defendants further argue that even if I were to conclude that there were genuine disputes of material fact as to the reasonableness of Sullivan's use of force, summary judgment is sill proper because Sullivan is entitled to qualified immunity.

Although credibility determinations are not appropriate at this stage of litigation, in excessive force cases, summary judgment is proper "'where undisputed medical records *directly and irrefutably* contradict a plaintiff's descriptions of his injuries, [because] no reasonable jury could credit plaintiff's account of the happening.'" *Henry v. Officer Pierce*, 1:11-cv-845, 2017 WL 3610507, at *2 (S.D.N.Y. Aug. 21, 2017) (quoting *Davis v. Klein*, No. 11-CVM868, 2013 WL 5780475, at *4 (E.D.N.Y. Oct. 25, 2013). Rolkiewicz alleges that Officer Sullivan smashed his head and face into the patrol car, choked him, and punched on his spine. (FAC ¶¶ 24–27). The entirety of Rolkiewicz's evidence in support of these allegations is his own complaint, testimony, and statements, in all of which he described the injuries he sustained from these attacks at length. His descriptions of these injuries, however, are contradicted by documented medical evidence.

Rolkiewicz's testified that that he suffered "cuts and scrapes" under his right eyebrow and black and blue arms and a black and blue back. (ECF No. 56-6 at 11:7–16). He said that his face

was cut open on the right side and that "[t]he whole [right] side of his face was swollen" and that he "was bleeding and [his] eye swelled up." (ECF No. 56-5 at 18:17–20). Rolkiewicz also alleged suffering long-term injuries. He testified that he has "permanent damages to [his]…neck and…spine" including "[n]eck injury to [his] nerves, crushed vertebras to the back of [his] neck, by [his] spinal column vertebrae 4, 5, and 6, which came up in the MRIs, [and] hand damage to [his] nerves." (ECF No. 56-3 at 16:3–4; 17:3–9). He also stated that he had lost consciousness during the attack.

But the Lenox Hill medical records from the night of the incident tell a very different story. They provide that Rolkiewicz's only injury post-arrest was a contusion on the right side of his head. (ECF No. 56-12 at 4). The reporting physician specifically noted that Rolkiewicz's head was otherwise "[n]ormocephalic," and that his eyes were similarly clear and without injury. (*Id.* at 4–5). His neck is described as having been "supple; non tender" and again, his range of motion and the nerves in his extremities were normal. (*Id.* at 5). The report states that Rolkiewicz complained to the doctors of back and shoulder pain upon his arrival, but X-rays taken that night reflected no fractures or dislocations. The ultimate diagnosis was chronic pain. (*Id.* at 4–11).

Rolkiewicz's other medical records do not remedy the problem. As discussed, Defendants also submitted medical records from doctors' appointments Rolkiewicz had both before and after he was arrested, as well as the records of the EMTs who treated Rolkiewicz at the time of his arrest. The EMT records demonstrate that when Rolkiewicz was transported to the hospital, he was conscious. (ECF No. 56-11 at 4). The later physician medical records indicate that in the months following the September 2015 arrest, Rolkiewicz suffered symptoms of "long standing peripheral neuropathy as well as neck and back pain due to cervical spinal stenosis." (ECF No. 56-16 at 6). These symptoms potentially could be evidence supporting Rolkiewicz's allegation

16

that he sustained damage to his nerves and spine as a result of being attacked by Sullivan. However, the pre-attack physician records clearly show that Rolkiewicz was suffering from spinal stenosis and peripheral neuropathy *before* his interaction with the officers. (ECF No. 56-18). Rolkiewicz testified to the CCRB that Sullivan's attack had "aggravated" his spinal stenosis, however, the post-incident medical records do not provide any information reflecting that Rolkiewicz was suffering from any new cervical or spinal pain. They certainly provide no evidence that Rolkiewicz had crushed vertebrae as he testified.

The medical records in this case directly and irrefutably contradict Rolkiewicz's account. They show that when Rolkiewicz was transported to the hospital on the night of the incident, he was conscious, and his only facial injury was a contusion on his head. They show that no MRI or X-ray taken reflected any crushed vertebrae or nerve damage and they provide no indication that Rolkiewicz suffered long-term physical consequences to his neck or spine that were *caused* by the attack.

Rolkiewicz had every opportunity to present the Court with additional factual information or evidence in support of his excessive force allegations. Yet, based on my review of the record, the only evidence supportive of Rolkiewicz's injuries is his own testimony and complaint. "While, in certain instances, a plaintiff may exclusively rely on [his] own testimony…[a]bsent corroborating evidence, testimony that is inconsistent and contradictory may be insufficient to survive summary judgment." *Campbell*, 2019 WL 2717691, at \*5; *see Jeffreys*, 426 F.3d at 552 ("[I]n the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether 'the jury could reasonably find for the plaintiff,' and thus whether there are any 'genuine' issues of material fact, without making some assessment of the plaintiffs account.")

(internal citations omitted); *see, e.g., Jenkins v. Town of Greenburgh*, No. 13-cv-8845, 2016 WL 205466, at *5 (S.D.N.Y. Jan. 14, 2016) (granting summary judgment on excessive force claim where Plaintiff's alleged injury to thumb was unsupported by hospital records or any evidence other than Plaintiff's own deposition testimony); *Henry v. Brown*, 406 F. Supp. 3d 211, 215 (E.D.N.Y. 2016) (granting summary judgment on excessive force claim where Plaintiff claimed to have been rendered "unconscious lying in a pool of his own blood" but "offer[ed] nothing more than his own bare assertions to support these claims, and hospital records from the date of the alleged incident tell a different story."). Here, where Rolkiewicz's testimony is contradicted by medical documents, his word alone is not enough to create a *genuine* dispute of material fact. *See generally, Campbell*, 2019 WL 2717691 at *5.

Although I do not think a reasonable jury, given the medical records problem, could find that Sullivan delivered the forceful beating Rolkiewicz alleged, by Defendants' own admission, Sullivan did strike two blows to Rolkiewicz's back with an unopened baton. Given this undisputed fact, I also must assess whether there are genuine disputes of material fact that preclude me from concluding that Sullivan's use of force was reasonable as a matter of law.

Sullivan asserts that based on the undisputed facts, the two baton strikes were objectively reasonable as a matter of law. He also argues that, at minimum, there is no genuine dispute of material fact that he is entitled to qualified immunity.

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal citation omitted). "In resolving

questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right[.]' ... The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Felix v. City of New York*, 408 F. Supp. 3d 304, 308 (S.D.N.Y. 2019) (quoting *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (alterations in original) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "Said differently, if the officer's conduct violated a right, we analyze the objective reasonableness of the officer's belief in the lawfulness of his actions. If the officer reasonably believed that his actions did not violate plaintiff's rights, he is entitled to qualified immunity even if that belief was mistaken." *Loria v. Gorman*, 306 F.3d 1271, 1282 (2d Cir. 2002) (internal citation omitted).

> Thus, even where the right violated is both clearly established and well known, such that a reasonable officer would be aware of its existence, liability is not absolute. *See Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 ("For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. Much the same could be said of any other constitutional or statutory violation.").
> This rule, which looks to the objective reasonableness of the challenged act, even where it is violative of clearly established law, ensures that plaintiffs cannot "convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." *Id.* at 640. In this analysis, an officer's subjective beliefs and motivations are, in fact, irrelevant. Instead, courts determine only whether a jury could find that " 'officers of reasonable competence could disagree' on the legality of the defendant's actions." *Lennon,* 66 F.3d at 420 (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). And wherever courts so find, summary judgment on qualified immunity grounds is appropriate. *Id.*

*Mesa v. City of New York*, No. 09 civ. 10464, 2013 WL 31002, at *7 (S.D.N.Y. Jan. 3, 2013).

Again, to determine whether Sullivan's use of force violated Rolkiewicz's Fourth Amendment right to be free from excessive force, consideration of three factors is appropriate:

"(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396). It is undisputed that Rolkiewicz resisted arrest. It is also undisputed that the crime he was being arrested for was not violent. What is disputed are the degree to which and manner in which Rolkiewicz resisted arrest. I cannot assume, for example, that as Sullivan testified, Rolkiewicz struck him or refused to listen to verbal commands. These facts are relevant to the Fourth Amendment reasonableness inquiry and therefore the qualified immunity reasonableness inquiry as well. Based on these disputed facts, I cannot say, as a matter of law, that Sullivan did not violate Rolkiewicz's Fourth Amendment rights by striking him with the baton. However, I still conclude that Sullivan is entitled to qualified immunity.

Officers of reasonable competence could disagree about whether Sullivan's conduct was excessive, which makes summary judgment on the basis of qualified immunity for Rolkiewicz's excessive force claim appropriate. The right to effectuate an arrest does include "the right to use *some* degree of physical coercion" and the force Sullivan chose to use was relatively minor. *Esmont,* 371 F.Supp.2d at 214 (emphasis added). The undisputed facts show that he hit Rolkiewicz twice in the back because Rolkiewicz was stiffening his arms, throwing his arms back, and generally making it difficult to handcuff him. A reasonable officer could believe that this type of minimal force in the face of resistance to arrest is acceptable for the purpose of compliance. Based on the Lenox Hill medical records, these strikes do not appear to have caused any injury beyond the sensitivity that Rolkiewicz reported. There is no indication that Rolkiewicz had bruises or lacerations on his back and the X-rays confirmed that there was no

fracturing or severe damage. Although the *de minimis* nature of Rolkiewicz's injury is not, by

any means, fatal to his excessive force case, it is relevant "because it is probative of the amount

and type of force actually used by the arresting officers[.]" *Yang Feng Zhao v. City of New York*,

656 F. Supp. 2d 375, 390 (S.D.N.Y. 2009). Hitting an arrestee with a baton is not the type of

force inherent to an arrest, which "is by nature an act involving some degree of dominion, and

hence force[.]" *Id.* However, given the indication from this record that the blows were applied

minimally, this is the type of force that a reasonable officer could believe was lawful when

confronted with a resisting arrestee.

Second Circuit law supports this analysis. In *Tracy v. Freshwater*, the Second Circuit

considered whether the district court erred in granting summary judgment for the Defendant on

Plaintiff Tracy's excessive force claim. 623 F.3d at 93–100. A police officer pulled Tracy over

for a traffic violation. In the course of that interaction, Tracy gave the officer several fake names,

prompting the officer to suspect that Tracy might be wanted in connection with a criminal

offense. The officer ordered Tracy out of the car, ordered him to place his hands on top of his

head, and to turn to face away from the officer. According to Tracy, he obeyed the officer, but as

he was turning, he slipped on ice and grabbed the car to keep from falling. Tracy alleged that the

officer then hit him twice with a metal flashlight before Tracy began to run away. *Id.* at 93. A

physical struggle eventually ensued, which allegedly included the officer pepper spraying Tracy

after he was already handcuffed. *Id.* at 94. The officer disputed Tracy's account, asserting that he

hit Tracy with the flashlight only after Tracy had attempted to punch him, and pepper sprayed

Tracy while Tracy was still actively resisting arrest. *Id.* at 93–94.

The Second Circuit interpreted Tracy's excessive force claim to allege that the officer

"exceeded Fourth Amendment constraints in four different ways[.]" *Id.* at 96–97. The district

court granted summary judgment on all four claims, reasoning that "even if any factual disputes were resolved in Tracy's favor, none of the alleged conduct constituted unreasonable force—and thus a constitutional violation for purposes of the qualified immunity analysis—as a matter of law." *Id.* at 97. The Second Circuit affirmed the district court's decision with respect to all excessive force claims except for the one based on the pepper spraying. *Id.* With respect to this claim, the Court explained that the "infliction of pepper spray…has a variety of incapacitating and painful effects…and, as such, its use constitutes a significant degree of force." *Id.* at 98. Given the significance of the force and the disputes surrounding whether the pepper spray was applied before or after handcuffing and from what distance, the Court decided that, despite Tracy's resistance of arrest, it was still for a jury to decide whether a reasonable officer could have concluded that the use of the spray in those circumstances was lawful. *Id.* at 98–99.

The Court analysis of Tracy's excessive force claim based on the metal flashlight is more applicable to the instant case. As in the instant case, at the time of the flashlight strikes, the arrestee was not obviously fleeing, but was resisting arrest. The Court determined that summary judgment was proper because the officer "had ample basis to presume that Tracy was at that time a fugitive seeking to evade capture[,]" what the officer perceived to be "Tracy's attempt to flee or fight back posed a serious and imminent threat to [the officer's] safety[,]" Tracy appeared to be refusing to comply with orders and instead, to be resisting arrest, and finally, Tracy's only injury was "a small laceration or abrasion to the scalp[,]" indicating that the flashlight "force was a reasonable and proportionate response under the circumstances." *Id.* at 97.

Pursuant to *Tracy*, a reasonable officer could think that using minimally a hard metal instrument, like an unopened baton or flashlight, to strike an arrestee resisting arrest, was a reasonable way to effectuate an arrest. The severity of the instrument Sullivan used is much more

akin to a metal flashlight than pepper spray. He also used it only twice, and in a manner that left no marking. There is no clearly established law that would have put Sullivan on notice that striking an actively resisting arrestee twice to effectuate an arrest in a location of the body that produced no injury, was unlawful. As such, Sullivan is entitled to qualified immunity on Rolkiewicz's excessive force claims.

## II. Failure to Intervene

In his Amended Complaint, Rolkiewicz alleges that while Sullivan attacked him, Officer Quirk "stood by, [and] did nothing to stop his partner," he "fail[ed] to intercede on behalf of Plaintiff to protect him from unjustified and unconstitutional treatment[.]" (FAC ¶¶ 26, 50). "An officer may be held liable for preventable harm caused by the actions of other officers, if '(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene.'" *Jackson v. City of New York*, 939 F. Supp. 2d 235, 258 (E.D.N.Y. 2013) (quoting *Jean–Laurent v. Wilkinson,* 540 F.Supp.2d 501, 512 (S.D.N.Y.2008)).

"Failure to intervene claims are 'contingent upon the disposition of the primary claims underlying the failure to intervene claim.'" *Usavage*, 932 F. Supp. 2d at 599 (quoting, *Matthews v. City of New York*, 889 F. Supp. 2d 418, 443–44 (E.D.N.Y. 2012)). Where, as here, the Court has concluded already that the predicate claim, excessive force, cannot survive summary judgment, summary judgment is appropriate on the dependent failure to intervene claim as well. *See Pertusiello v. Cty. Of Suffolk*, No. 16-CV-2931, 2019 WL 4228485, at *8 (E.D.N.Y. Aug. 19, 2019). Accordingly, Defendants' Motion for Summary Judgment with respect to Rolkiewicz's failure to intervene claim is granted.

### III. Denial of Medical Treatment

In his Amended Complaint, Rolkiewicz claims that Sullivan and Quirk denied him medical treatment. (FAC ¶¶ 33–34, 37). He provided more detail in his deposition, testifying that the doctors at Lenox Hill instructed the officers to transport him to a second hospital that was more equipped to handle his injuries and the officers refused. (ECF No. 56-3 at 15:3–15).

"To establish a claim of deliberate indifference to a medical condition in violation of the Fourteenth Amendment, a pretrial-detainee plaintiff must 'show that she had a serious medical condition and that it was met with deliberate indifference.'" *Dollard v. City of New York*, 408 F. Supp. 3d 231, 236 (E.D.N.Y 2019) (quoting *Bruno v. Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (summary order) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)); *see also Universal Calvary Church v. City of New York*, 2000 WL 1538019, at *8 (S.D.N.Y. Oct. 17, 2000). "The deliberate indifference standard embodies both an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, 'sufficiently serious,' [and][s]econd, the charged official must act with a sufficiently culpable state of mind." *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (internal citations omitted) (alterations in original). The objective prong is satisfied by evidence showing that the medical need in question was serious, meaning "one that contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain." *Universal Calvary Church*, 2000 WL 1538019, at *8 (internal quotations marks omitted). The subjective element requires a showing "that a specific defendant was both 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists' and that the defendant drew the inference…[it] 'entails something more than mere negligence ... [but] something less than acts or omissions for the very purpose of causing

harm or with knowledge that harm will result.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835, 837 (1994)).

Rolkiewicz's claim fails on the first prong. Rolkiewicz testified that he sustained severe injuries, however, as discussed already, this testimony is contradicted directly by medical records. The only injury the evidence supports is the bruise on Rolkiewicz's head, which does not alone amount to a "condition of urgency." *See Rickett v. Orsino*, No. 10 Civ. 5152, 2013 WL 1176059, at *17 (S.D.N.Y. Feb. 20, 2013) (objective prong not satisfied where injury alleges is a split lip) (collecting cases); *Ford v. Phillips*, No. 05 Civ. 6646, 2007 WL 946703, at *12 (S.D.N.Y. March 27, 2007) (objective prong not satisfied where injuries alleged included a minor bruise to the head, slight bleeding, and scratches). Aside from the head contusion, the medical records reference only Rolkiewicz's chronic pain and provide no indication that the pain required further medical attention immediately. To the contrary, the hospital discharge papers instruct Rolkiewicz to make an appointment with his "regular doctor for ongoing care" and state that "The Emergency Department/Urgent Care is not the right place for the ongoing care of chronic pain." (ECF No. 56-12 at 15).

Accordingly, based on my review of the record, summary judgment is granted as to Rolkiewicz's claim for Denial of Medical Treatment/Deliberate Indifference.

## IV. Intentional Infliction of Emotional Distress

Rolkiewicz claims that Sullivan and Quirk "acted with the desire to cause…Rolkiewicz mental distress" and that as a result, Rolkiewicz "sustained severe and disabling permanent physical injuries, debilitating emotional and psychological distress, anguish, anxiety, fear, embarrassment, degradation, shock, debasement, pain, suffering, loss of reputation and humiliation." (FAC ¶¶ 90, 92). Although these allegations are provided under an untitled cause

of action in Rolkiewicz's FAC, I, like the Defendants, interpret them to state a claim for intentional infliction of emotional distress ("IIED").

Rolkiewicz's IIED claim fails on the merits. Under New York law, "[t]o maintain a claim for intentional infliction of emotional distress, a plaintiff must show: (1) extreme and outrageous conduct; (2) with the intent to cause, or with reckless disregard of the substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress." *Universal Church*, 2000 WL 1538019, at *12. "To satisfy the fourth element, a plaintiff generally must support allegations of suffering from severe emotional distress with 'medical evidence, not the mere recitation of speculative claims.'" *Cuellar v. Love*, 2014 WL 1486458, at *14 (S.D.N.Y. April 11, 2014) (quoting *Walentas v. Johnes*, 257 A.D. 2d 352, 353(1st Dep't 1999)).

Outside of conclusory allegations in his complaint, Rolkiewicz provided no testimony, no evidence indicating that he suffered from emotional distress as a result of this incident. Neither the Lenox Hill records, nor subsequent medical records provide any comment on Rolkiewicz's psychological or emotional state. Rolkiewicz simply has offered the Court no evidence to support his IIED claim and therefore, Defendants' Motion for Summary Judgment with respect to this claim is granted. *See Crews v. County of Nassau*, 995 F. Supp. 2d 186, 213–14 (E.D.N.Y. 2014) (summary judgment on IIED claim appropriate where "plaintiff relies exclusively on his own testimony…there is no medical evidence establishing severe emotional distress.").

## V. Conspiracy

In his thirteenth cause of action, Rolkiewicz claims that Defendants conspired to violate his civil rights pursuant to 42 U.S.C. § 1985(3). (FAC at ¶¶ 111–13). This cause of action is entitled "42 U.S.C. § 1985(3) Conspiracy with Racial Animus," however, there is no indication

elsewhere in the complaint or record that Rolkiewicz was alleging that race was a factor in his arrest or assault.

Defendants argue that summary judgment is proper because the intracorporate conspiracy doctrine bars Rolkiewicz's conspiracy claims because all Defendants are employees of the New York City Police Department. The intracorporate conspiracy doctrine "provides that employees or agents of a single corporate entity, acting within the scope of their employment, are legally incapable of conspiring together." *Ali v. Connick*, 136 F. Supp. 3d 270, 282 (E.D.N.Y. 2015). As Sullivan and Quirk were both employees of the New York City Police Department acting as officers on the night of this incident, the intracorporate conspiracy doctrine clearly applies. However, "[a]n exception to the intracorporate conspiracy doctrine applies to individuals within a single entity when they are pursuing personal interests wholly separate and apart from the entity." *Castanza v. Town of Brookhaven*, 700 F. Supp. 2d 277, 292 (E.D.N.Y. 2010) (quoting *Bond v. Bd. of Educ. of the City of New York*, No. 97 civ. 1337, at *2 (E.D.N.Y Mar. 17, 1999)). Courts have applied this exception in cases where officers were alleged to have exercised excessive force and then conspired to cover-up this alleged use of force. *See Sanders v. Long Island Newsday*, No. CV 09-2393, 2015 WL 5475694, at *16 (S.D.N.Y. July 14, 2015) (intracorporate conspiracy doctrine did not apply where officers were alleged to have engaged in an unprovoked assault on a plaintiff "when he refused to confess to various open, unsolved crimes committed prior to the day of his arrest and took his suit to cover up their actions"); *Alvarez v. City of New York*, No. 11 Civ. 5464, 2012 WL 6212612, at *3 (S.D.N.Y. Dec. 12, 2012) (personal interest exception applies where complaint "alleges that the defendants conspired to 'cover up' the events of [a] shooting and that this conspiracy operated to deprive plaintiff of his rights to be free of unreasonable force.").

Rolkiewicz has not alleged any facts or made any statements in his complaint or testimonies suggesting that Sullivan and Quirk conspired for their personal interests. I therefore agree with Defendants that the intracorporate conspiracy doctrine is an appropriate basis for summary judgment in this case. However, summary judgment on this conspiracy claim is also proper on the merits.

To establish a § 1985(3) conspiracy claim, a plaintiff must provide evidence showing:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

*Mian v. Donaldson, Lufkin & Jenrette Secs., Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (internal citation omitted). "Furthermore, the conspiracy must also be motivated by 'some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action.'" *Id.* at 1088 (quoting *United Bhd. Of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29 (1983)); see *Kee v. Hasty*, No. 01 Civ. 2123, 2004 WL 807071, at *25 (S.D.N.Y. April 14, 2004) ("Under Section 1985(3), a plaintiff must allege a conspiracy that is motivated by racial or related class-based discriminatory animus"). "A conspiracy need not be shown by proof of an explicit agreement but can be established by showing that the parties have a tacit understanding to carry out the prohibited conduct. A plaintiff must, however, provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Sanders*, 2015 WL 5475694, at *14 (internal citations and quotation marks omitted).

No reasonable jury could conclude that Quirk and Sullivan engaged in a civil rights conspiracy here. Rolkiewicz has offered no facts to support his claim that Sullivan and Quirk

conspired against him. All he has provided are conclusory allegations in his complaint, which are insufficient. *See Trapp-Miley v. City of New York*, No. 09-CV-3933, 2012 WL 1068102, at *14 (E.D.N.Y. Jan. 17, 2012) (recommending grant of summary judgment on conspiracy claim where "[p]laintiff's complaint contains only conclusory allegations of a conspiracy, without reciting any facts suggesting that defendants conspired to violate her rights.") (internal citations omitted). He similarly has "fail[ed] to identify any racial motivation or discriminatory animus behind the alleged conspiracy. Summary judgment is therefore appropriate with respect to Rolkiewicz's 42 U.S.C. § 1985(3) claim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to all remaining claims in Rolkiewicz's Amended Complaint.

**SO ORDERED.**

**Dated:** March 3, 2020

       **New York, New York**

                         **ANDREW L. CARTER, JR.**

                         **United States District Judge**